**W. D. BAKER, Appellant,**

v.

**STEWART SAND & MATERIAL COMPANY, a Corporation, Respondent.**

No. 23312.

Kansas City Court of Appeals.

Missouri.

Nov. 6, 1961.

———◆———

Warren S. Earhart, Loeb H. Granoff, Kansas City, for appellant.

Kuraner, Freeman, Kuraner, Oberlander & Lamkin, Charles F. Lamkin, Jr., Kansas City, for respondent.

BROADDUS, Judge.

This is an action for damages for personal injuries sustained in the use of ready-mixed concrete. Plaintiff recovered a verdict and judgment against defendant Stewart Sand & Material Company in the amount of $5000. The trial court set aside the verdict and entered judgment for defendant in accordance with its motion to set aside the verdict, and in the alternative, the trial court sustained defendant's alternative motion for a new trial. Plaintiff has appealed.

Plaintiff is a real estate salesman. He is a high school graduate and also took a business course in a college at Minneapolis, Minnesota. His testimony was that in July, 1958, he decided to rebuild a concrete patio adjacent to his house and built forms and poured a concrete base with ready-mixed concrete. His previous experience with concrete had been as a boy to assist his father, with concrete mixed by himself and brother, in building a foundation for a house; in 1950 building with ready-mixed concrete the original patio; in 1952 building some steps with ready-mixed concrete; and in 1953 or 1954 purchasing two sacks of cement, of which he used only part for patching. Plaintiff stated that he did not know that cement contains lime, understands that lime has a caustic effect, but does not know whether it has a poisonous effect. He did not know that cement contains material which is harmful on prolonged contact.

On August 2nd, 1958, defendant delivered two cubic yards of ready-mixed topping concrete to plaintiff, which plaintiff had ordered on advice of a friend. Plaintiff did not tell defendant how he wanted the material mixed. Plaintiff when using the concrete was dressed in a short sleeved T-shirt, blue jeans, cotton socks and rubber hunting boots and wore leather gloves. The defendant's truck unloaded the concrete topping and a friend of plaintiff hauled it to the patio in a wheel-barrow. Plaintiff spread the concrete on the patio, using a shovel and rake, leveled with a two by four board, putting one and one-half inches on the top of the concrete base. Plaintiff had to stand in the material in order to level it, and, in unloading and spreading, the material splashed on him and his clothing, so that parts of his clothing became saturated with the concrete topping, and some of the material dripped into his boots. It took about two hours to do the work.

After placing and smoothing the topping concrete plaintiff took a bath and laid down to rest and fell asleep for an hour or longer. When he awoke his legs itched and red spots on his legs were oozing a brown substance. He then changed his clothes and spread the top of the concrete with a trowel by kneeling on a piece of plywood with an old piece of rug under it. This took about three hours.

Around five o'clock plaintiff's legs began to get sore and by ten p. m. began to hurt. His legs and feet were red and swollen and draining the next day and very sore, and his feet and legs hurt when he put his weight on them. Monday, August 4, 1958, he couldn't stand on his feet and he dressed and consulted Dr. Robert H. Hodge. The doctor prescribed moist applications and other treatment. Plaintiff was confined to bed for five or six days. He returned

to work August 21 but only worked half days until October 1st. It was September or October before he could take the bandages off and when he did his legs were scarred and discolored. His legs and feet were still scarred at the time of the trial and the scars itched and bled if scratched. Dr. Hodge found plaintiff's condition to be as above described and diagnosed it as contact (caused by something with which he came in contact) dermatitis, and expressed the expert opinion it was caused by exposure to the concrete mixture.

Plaintiff contends that the trial court erred in setting aside the verdict in his favor and rendering judgment for defendant in accordance with its motion for a directed verdict.

The theory of the plaintiff was that the cement and concrete were dangerous and unsafe because of the caustic material contained therein, and that the defendant knew it would be dangerous to the plaintiff, but failed to warn him. The facts showed that the concrete was a standard mixture, and that the cement contained therein met all standard specifications. There was no probative evidence to the contrary. The question is whether the defendant, under the circumstances, should have reasonably contemplated that the plaintiff's injuries would naturally and probably follow from the furnishing by defendant to the plaintiff of a building material in universal use down through the years, unless it warned him that prolonged exposure without proper clothing in hot weather might irritate his skin—a warning shown by the undisputed evidence never given in the industry.

We have found no Missouri case directly in point. However, the question has been before the courts of other states and in all of those cases a recovery was denied.

The case of Katz v. Arundel-Brooks Concrete Corporation, 220 Md. 200, 151 A. 2d 731, 78 A.L.R.2d 692 (1959) involved practically the same facts as those appearing in the instant case. Plaintiff wanted to put down a concrete floor in the basement of a building. He ordered four cubic yards of ready-mixed concrete. Plaintiff, with a helper, spread the concrete with rakes and other tools to a depth of four inches. He had never worked with concrete before and made no inquiries of anyone as to the proper precautions to be taken. Plaintiff spent five hours on his hands and knees in and around the concrete. He wore no gloves, pads or protective clothing except ordinary work trousers. The knees of his trousers were thoroughly saturated with the liquid mixture. When he finished the spreading job, he found that he had sustained third degree burns on his knees. He suffered no injury to his bare hands.

Plaintiff in that case sued on a negligence theory. He alleged that the concrete was unfit for the purpose intended, and that the defendant gave no warning of the dangerous, or potentially dangerous, properties of the concrete, which were known and should have been known to the defendant. Plaintiff's main witness was a chemical engineer who qualified as an expert on cement (30 years with the U. S. Bureau of Standards). This witness testified as to the chemical properties of cement, as follows:

"That all cement contains some alkaline ingredients such as sodium and potassium hydroxides in amounts up to 1% and some small amounts of calcium oxide which on prolonged contact with the skin can produce a chemical burn, particularly if the skin is sensitized by cuts, bruises, or chafing as by the sand in a concrete mix. Among people who work with cement, these properties are well known and it is customary to use some protection, such as boots, pads or burlap wrappings. Some wear gloves, however, the palms of the hands are not particularly sensitive to injury. There has never been any government directive requiring sellers of mixed concrete to post a warning notice on the product or to warn of its chemical properties or caustic action when wet."

The court, in holding that the defendant had no duty to warn, stated: "We take it that this is not a claim for breach of warranty of fitness. There was no showing that the concrete delivered was defective, that it contained anything unusual, or that it was not safe to use in the usual and customary manner. The buyer got precisely what he ordered, wet concrete mixed according to specifications. * * *

"An action for negligence will lie against a supplier of a commodity for failure to warn of a latent danger attendant upon a proper use of the commodity supplied, at least where injury is foreseeable and probable * * * knowledge of dangerous properties may be imputed to the manufacturer or supplier.

"The authorities indicate that the test is one of reasonableness under the circumstances; that a supplier is under a duty to make his product reasonably safe for its intended use with ordinary care; but a duty to warn of inherent dangers only arises when there is a reasonable probability of injury unless warning is given. Most of the cases in which liability has been found are cases where there was a serious defect in the commodity supplied, or where the commodity was so new that its dangerous properties could not reasonably be known or ascertained by the user. *Concrete is certainly not a new product, since it has been in consumer use in every kind of construction project for at least fifty years.* Moreover, it is perfectly safe to use if normal precautions are taken against prolonged application to sensitive portions of the skin. The caustic properties of lime, and lime products, have been known for centuries. In considering the extent of the duty to warn, it may be noted that ready-mixed concrete is customarily sold to builders who are thoroughly familiar with its properties, not to a casual user without prior experience. Thus warnings in most cases would only dilate upon the obvious. *We think it would be as unreasonable to require every supplier of concrete to warn of its caustic properties as to*

*require an electric company to warn of the danger of touching uninsulated wires. If the danger is not patent, it is at least in the realm of common knowledge which the supplier may take for granted."* (Emphasis ours.)

In Imperial v. Central Concrete, 1 A.D.2d 671 (1955), 146 N.Y.S.2d 307, affirmed without opinion, 2 N.Y.2d 939, 162 N.Y.S.2d 35, 142 N.E.2d 209 (1957), there was a nonsuit at the close of the plaintiff's case in the trial court. The appellate division affirmed in a memorandum opinion, one justice dissenting, and the court of appeals unanimously affirmed without opinion. The court held that:

"Even if it be assumed that (plaintiff) proved that his injuries were caused by lime or some other substance improperly present in the concrete delivered by (defendant), it is our opinion that there is no proof that (defendant) had actual or constructive knowledge of the presence of such harmful substance in the concrete or was in any way negligent in selling or delivering the concrete. *There is no evidence that concrete is commonly considered to be a dangerous commodity or that tests were usual or customary before it was sold or that injuries from its use was within the range of reasonable apprehension."* (Emphasis ours.)

Also in Dalton v. Pioneer Sand and Gravel Company, 37 Wash.2d 946, 227 P.2d 173 (1951), the trial court dismissed the action at the close of plaintiff's case. The Supreme Court affirmed the dismissal in a unanimous decision. The plaintiff tried his case on breach of warranty under the Uniform Sales Act. His theory was that the cement was not of merchantable quality. There was no evidence that the cement contained any unusual substance or differed from any ordinary cement in any way. The court noted that the "merchantable quality" means that the substance sold is reasonably suited for the ordinary uses it was manufactured to meet. No contention was made there by the plaintiff that

the cement was not satisfactory for the laying of a basement floor. The court held that this is the only purpose for which the test of merchantability can be applied, and there was, therefore, no breach of warranty of quality.

Plaintiff there also advanced the theory that the cement had a concealed or hidden danger unknown to plaintiff, and that the defendant should have warned him that it would burn him, and that failure to do so was negligent. With respect to this the court held that:

*"The injury occurred in the handling of a standard and common commodity;* no attempt was made to show that knowledge of its nature is limited to experts and is beyond the ken of laymen, generally. The duty appellant seeks to invoke does not arise unless there is a showing of inherent danger in the material, known only to experts, which the seller knows or ought to know would likely produce injury to a handler of ordinary knowledge and prudence." (Emphasis ours.)

In Simmons v. Rhodes & Jamieson, Ldt., 46 Cal.2d 190, 293 P.2d 26 (1956), plaintiff asserted both breach of warranty and negligence as a basis for his cause of action. The court disposed of the breach of warranty claim in much the same manner as in the Dalton case, supra:

"It is conceded that the cement was fit for the purpose of laying the basement floor. This is the only purpose for which the test of merchantability could be applied under the facts of the present case. *There is likewise no merit in the proposition that the cement had a concealed or hidden danger unknown to plaintiff and that defendant should have warned him that it would burn his skin. The injury occurred in the handling of a standard and common commodity."* (Emphasis ours.)

Plaintiff in the Simmons case also alleged negligence and presented his case under the *res ipsa* theory. The court held that *res ipsa loquitur* in this case was not applicable because "in the absence * * * of evidence of feasible means of discovering the defects or danger in the commodity sold, the seller is not liable for an injury resulting from the use of the commodity." The court went on to note:

"The only evidence of any testing was that defendant * * * had its product tested for proper proportions of materials to be used for various types of construction. * * *

"It is a matter of common knowledge that water activates the lime in cement [citing the Dalton case, also, 'Lime' Webster's International Dictionary, 6 Encyclopedia Britannica].

"A street superintendent testified that lime does not give off heat until it becomes wet. Obviously, thinning the solution would allow it to soak through the plaintiff's clothes more quickly." (Plaintiff had apparently added additional water in order to thin out the mixture.)

Plaintiff in the Simmons case had had some previous experience with laying cement. He was never bothered before except by the roughening of the skin of his hands. The court noted that it is a matter of common knowledge that cement contains lime. Plaintiff there knew that lime is caustic and that exposure to it irritates the skin. Plaintiff there also knew that cement workers customarily wore boots and worked from boards, although he testified that he thought that the purpose of this was to keep from getting dirty, not to keep from getting burned.

Plaintiff relies upon the cases of Haberly v. Reardon, 319 S.W.2d 859 (Mo.Sup.) and Bean v. Ross Manufacturing Co., 344 S.W. 2d 18 (Mo.Sup.) These cases involved Bondex, a patented house paint, and Rossite, a patented drain cleaner, both new products, containing a high percentage of strong chemicals (Bondex is 44% lime, and 47% Portland cement, 319 S.W.2d 1. c. 861), and presenting obvious dangers to users which the manufacturers recognized

and attempted to avoid by warning labels. These cases involve a product where "the supplier knows or should know that its use is or is likely to be dangerous." 344 S.W.2d l. c. 25. The question in each case was the sufficiency of the warning under the circumstances. These cases are obviously not analogous to the instant case.

■ Under the circumstances of the instant case, we think there was no duty to warn, and hence the trial court did not err in setting aside the verdict.

The judgment is affirmed.

All concur.