Milledge D. TATUM, et al.,

v.

CORDIS CORPORATION.

No. 3:89–0368.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 14, 1991.

Dennis L. Tomlin, Nashville, Tenn., for plaintiffs.

Robert J. Walker, Patricia Meador, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

### I.

#### A. *Procedural History*

This is a diversity products liability action brought by Milledge D. Tatum and his wife, Gladys Tatum ("plaintiffs") against a pacemaker manufacturer, Cordis Corporation ("Cordis").[1] Cordis has moved for summary judgment.

The plaintiffs filed a complaint on May 4, 1989. At that time, the plaintiffs alleged that both Cordis pacemakers surgically implanted in Milledge Tatum were defective and unreasonably dangerous and proximately caused injury to the Tatums, including medical expenses, lost wages, loss of enjoyment of life, mental anguish and loss of consortium. The plaintiffs seek recovery under theories of strict liability in tort, negligence, misrepresentation and breach of warranty, both express and implied.

Cordis filed a Motion for Partial Summary Judgment dismissing all claims related to the pacemaker implanted in 1978, known as the Omnicor Lambda model 190A. On July 25, 1990, the Court granted that motion, finding that the claims were barred by the statute of limitations.

On October 11, 1990, Cordis filed another Motion for Summary Judgment with respect to the remaining claims arising from the performance of the second pacemaker, the Omni–Stanicor Gamma model 334A. The defendant's Motion for Summary Judgment is supported by affidavits taken from James A. Fortino, a registered nurse employed by Telectronics Pacing Systems, Inc. as manager of the Warranty and Medical Records Department; Alan Nielson, a long-time employee of Cordis Pacing Systems and Telectronics Holding Ltd. who performed the analysis on Tatum's pacemaker; and Duane Schultz, an engineer employed by Telectronics, Inc. as Senior Vice President of Regulatory and Clinical Affairs. Defendant also has submitted Milledge D. Tatum's medical records from St. Thomas Hospital and Dr. George Burrus' office.

Plaintiff has filed four lengthy responses to that motion. Plaintiff proffers two main theories. First, she argues that the model 334A pacemaker is defective since it required replacement. Second, she maintains that since other model 334A pacemakers have been found to be defective, this particular model 334A pacemaker must have suffered similar problems.[2] To support her response, plaintiff relies on an affidavit from Milledge Tatum, congressional and federal investigations of Cordis, whistleblower memoranda, Cordis documents, and a federal case in which Cordis pled guilty to criminal charges.

The pending Motion for Summary Judgment raises two questions for this Court to consider. First, whether the plaintiff raises a genuine issue of material fact with respect to her claims for strict liability, negligence or breach of implied warranty pursuant to T.C.A. § 29–28–105(a). Second, whether the plaintiff raises a genuine issue of material fact with respect to her claims for breach of express warranty and misrepresentation. These issues will be addressed below.

#### B. *Facts*

Milledge Tatum was the recipient in 1978 and 1982 of two cardiac pacemakers designed and manufactured by Cordis.[3] The first pacemaker installed was an Omnicor

---

1. In December 1990, Mr. Tatum died and on January 9, 1991, Gladys Tatum was substituted as the proper party plaintiff on behalf of herself and the estate of Milledge D. Tatum.

2. In her responses, plaintiff continually cites to problems with Cordis pacemakers other than the one at issue here. That evidence is inapposite and cannot be relied on by this Court in making a determination about whether model 334A was defective or unreasonably dangerous.

3. Pacemakers are comprised of two component parts. The "pulse generator" is a pacemaker battery encapsulated in a metal case that initiates electrical impulses. The "leads" are insulated wires which carry the electrical impulse from the pulse generator to the heart. Schultz Affidavit at 1.

Lambda model 190A, serial number 24993. Affidavit of James A. Fortino I ("Fortino I") at 2. The second pacemaker was an Omni–Stanicor Gamma model 334A, serial number 11075. Affidavit of Alan Nielson ("Nielson") at 3. Tatum's doctors surgically installed both pacemakers to help treat his heart disease. St. Thomas Hospital Medical Records of Milledge D. Tatum ("Hospital Records") at 4–5.

Internal cardiac pacemakers are powered by batteries that eventually require replacement. Affidavit of Duane Schultz ("Schultz") at 2. Pacemakers such as the model 334A are designed so that a slight slowdown in rate will occur near the end of the battery's normal life. *Id.* Pacemakers also may fail for other reasons and, as a result, Cordis recommends that physicians regularly monitor their patients that have pacemakers. *Id.*

The instruction booklet provided by Cordis for the Omni–Stanicor Gamma pacemaker states that the pacer eventually will have to be replaced because of battery depletion or other malfunction. Nielson Affidavit, Exhibit A at 3, 4, 30, 34. The booklet also mentions the importance of regular monitoring of the pacemaker's performance. *Id.* at 3, 23. It emphasizes that:

> Implantable cardiac pacing systems are designed to perform reliably over an extended period of time; however, every implanted pacer must be replaced eventually. The physician and patient must accept the fact that, in spite of the care exercised in design, manufacture, and testing, component malfunctions and other complications cannot be eliminated completely, and a pacer replacement therefore may be required at any time.

*Id.* at 3. Another booklet provided by Cordis for doctors to give to their patients, states that:

> Like all other medical procedures, cardiac pacer therapy involves some risk of complications, which may interrupt proper pacer function and require additional surgery to correct. These complications may occur at any time after implication. Even if these complications do not occur,

all pacers at some time have to be replaced because the battery is running down.

Nielson Affidavit, Exhibit B at 13.

The model 190A pacemaker worked for four years until it stopped in May 1982. Fortino I Affidavit at 2. It was replaced with model 334A which operated without problem for six years before it was removed in May 1988. *Id.;* Nielson Affidavit, Exhibit E at 1, 2. Dr. George Burrus, Tatum's physician, reported a steady decrease in Tatum's pacemaker rate in the months prior to its removal. Specifically, a telephone monitoring system revealed that the rate slowed on February 11, 1988 from 69.3 to 69.0; on March 28, 1988 from 69.0 to 68.7; and on May 12, 1988 from 68.7 to 63.9. Nielson Affidavit, Exhibit E at 3; Hospital Records at 6. The pacemaker originally was programmed at 70 beats per minute. Medical Records of Milledge D. Tatum from Dr. Burrus' office ("Medical Records") at 62.

Dr. Burrus admitted Tatum to St. Thomas Hospital for battery replacement on May 19, 1988 since the previous monitoring tests revealed that his pacemaker rate had slowed to the point where it was ineffective and indicated that replacement was required, as recommended by Cordis. Hospital Records at 4–6; Fortino Affidavit, Exhibit B at 10 ("the first sign that the pacer's battery is beginning to lose power will be a gradual decrease in your pulse rate"). Tatum's pacemaker rate upon admission was 66 beats per minute. Hospital records at 7. Later that morning, the rate slowed to 20–30 beats per minute. *Id.*

Burrus replaced Tatum's model 334A and Tatum apparently recuperated without complications. Hospital Records at 5; Medical Records at 25.

Following surgery, the pacemaker was sent to Cordis for engineering analysis. Nielson Affidavit at 2. Cordis tested Tatum's model 334A pacemaker for engineering flaws and their July 26, 1988 analysis (also known as the "Assurance Returned Generator Analysis") revealed that it had failed due to battery depletion. Nielson

Affidavit at 2. No specific problem or defect was identified by the Cordis tests. *Id.*

Cordis originally estimated that model 334A pacemakers would last approximately 7.3 years. Schultz Affidavit at 2. In January 1986, Cordis lowered its service life prediction for the model 334A to five years based on clinical experience. *Id.;* Plaintiff's Additional Response to Cordis' Motion for Summary Judgment ("Additional Response"), January 10, 1991, Exhibit 20. Cordis advised treating physicians to monitor pacemaker patients monthly, beginning three months before the fifth year of operation. *Id.* Since Tatum's model 334A pacemaker worked for six years, it lasted beyond the service life predictions issued in January 1986. *Id.* at 3.

## II.

### A. *Standard of Review*

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. In responding to a motion for summary judgment, the nonmoving party cannot rest on its pleadings, but must present some "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

The Supreme Court concluded in *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), that a dispute about a material fact is "genuine" within the meaning of Fed.R. Civ.P. 56 only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248, 106 S.Ct. at 2510. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* at 252, 106 S.Ct. at 2512. The court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513. Summary judgment is required if, after adequate time for discovery, the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* ·477 U.S. at 322, 106 S.Ct. at 2552.

### B. *T.C.A. § 29–28–105(a)*

The Tennessee Products Liability Act of 1978, set forth at T.C.A. §§ 29–28–101–108, requires that for Tatum to prevail on her claims against Cordis on the theories of strict liability, negligence or breach of implied warranty, she must first establish that the pacemaker implanted into Tatum on May 14, 1982 was defective or unreasonably dangerous at the time it left defendant's control. *See* T.C.A. §§ 29–28–102(6), 29–28–105(a).[4] *See, e.g., Roysdon v. R.J. Reynolds Tobacco Co.,* 849 F.2d 230, 235–36 (6th Cir.1988) (for a plaintiff in Tennessee to recover under any theory of product liability, the plaintiff must establish that the product was defective or unreasonably dangerous at the time the product left the control of the manufacturer).

---

**4.** T.C.A. § 29–28–105(a) provides that:

A manufacturer or seller of a product shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.

T.C.A. § 29–28–102(6) provides that a product liability action under Tennessee statute:

shall include all actions brought for or on account of personal injury, death or property damage caused by or resulting from the man-

ufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. It shall include, but not be limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

In order to impose liability on Cordis, plaintiff must show that the pacemaker was either "in a defective condition" or "unreasonably dangerous." T.C.A. § 29–28–102(2) defines defective condition as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." *See Roysdon*, 849 F.2d at 236 (consumer knowledge about risks inherent in the use of a product is factor to be considered when determining if a product is defective). T.C.A. § 29–28–102(8) defines unreasonably dangerous as a product:

dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition.

*See Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 692 (Tenn. 1984) (holding that whether product is unreasonably dangerous may be determined from the "knowledge of the ordinary consumers of the products"). These statutory definitions essentially codify the "consumer expectation test" as the basis in Tennessee for assessing products liability. *See Higgs v. General Motors Corp.*, 655 F.Supp. 22, 26 (E.D.Tenn.1985), *aff'd without op. sub nom., Thomas v. Subaru of America, Inc.*, 815 F.2d 80 (6th Cir.1987). If the product is more dangerous than a reasonable consumer would have expected, it is defective.

▮ Strict liability is not absolute liability. It is not enough to show that the product caused the plaintiff's injury or was involved in it. The plaintiff must show that there was something wrong with the product. Evidence presented in this case establishes that use of the model 334A pacemaker was known to present certain health risks. Most importantly, the pacemaker had to be prescribed by a doctor and surgically implanted. Tatum was informed by his physician of the risks inherent in such a procedure and was provided with an instructional booklet by Cordis that warned of possible complications and battery deple-tion. The evidence is uncontradicted that Tatum's pacemaker worked well for six years before its battery ran down. Battery depletion of a pacemaker is not beyond the contemplation of the ordinary consumer. Analysis of the pacemaker by Cordis revealed that no components were defective and that the battery simply wore out as predicted. The plaintiff has been unable to demonstrate that the Cordis model 334A was defective or unreasonably dangerous despite the fact that she has had close to two years to produce such evidence. *See Street*, 886 F.2d at 1479 (movant can satisfy burden by demonstrating that non-movant, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case").

Tatum has introduced a plethora of documents demonstrating that Cordis has had its share of problems manufacturing pacemakers. The plaintiff presents evidence that model 334A pacemakers manufactured by Cordis have failed early and without warning due to problems with "glass feedthrough corrosion." Cordis' records show that pacemakers may be susceptible to self discharge caused by lithium deposition on the glass feedthrough insulator. Plaintiff's Additional Response to Cordis' Motion for Summary Judgment ("Additional Response"), January 10, 1991, Exhibit 16. For instance, one unnamed, uncited, government report excerpted by the plaintiff alleges that 7,637 units of model 334A had some type of unspecified problems. Partial Response to Defendants' Motion to Dismiss ("Partial Response"), October 22, 1990, Exhibit 16. Cordis also issued a series of notices to doctors with patients who had implanted Cordis model 334A pacemakers in 1983, 1984, 1987, and 1989 warning about potential early battery depletions. Additional Response, Exhibits 9, 11; Partial Response, Exhibit 17; Plaintiff's Response to Cordis Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response III"), Exhibit 5. For example, a 1989 notice stated that model 334A pacemakers "may have reduced service life due to premature individual cell depletion." Additional Response, Exhibit 9. The plaintiff also argues that an Au-

gust 31, 1988 guilty plea by Cordis to felony and misdemeanor charges in federal court in Florida has a bearing on the performance of Tatum's pacemaker. *See* Complaint, Exhibit Plea Agreement. By analogy, the plaintiff concludes that such evidence creates a reasonable inference that Tatum's model 334A pacemaker was similarly defective.

The Sixth Circuit considered and rejected a plaintiff's argument based on similar reasoning in *Taylor v. Medtronics Inc.*, 861 F.2d 980 (6th Cir.1988). In that case, the plaintiff argued, based on "several miscellaneous government documents and news reports which described potential defects in another type of Medtronics' lead wire," that the lead wires of her Medtronics pacemaker were defective. *Id.* at 987. Plaintiff did not present any evidence with respect to the specific attributes of the Medtronic lead wires in question. The court weighed this evidence by itself as well as against other deposition testimony, and concluded that it was insufficient proof to avoid a motion for summary judgment. The court concluded that:

> Even if plaintiffs could show that the leads were substantially similar, it would not negate the fact that Dr. Davis tested the specific leads which were implanted in Jessica Taylor's body and found that they were still intact with no breakage in either the insulation or the wire itself. Thus, even if the documentary evidence put forth by plaintiffs could be interpreted to show a high incidence of defects in the Model 4951 leads, the evidence still demonstrates that the leads in this case were not defective.

*Id.* at 988.

Tatum has presented a strikingly similar argument to this Court. But under the analysis employed by the Sixth Circuit in *Taylor*, the Court must reject such inconclusory evidence. None of the evidence produced by the plaintiff relates to the specific model 334A pacemaker implanted in Milledge Tatum. The congressional testimony and federal investigations turned up problems with Cordis' model 334A pacemakers, but not with Tatum's pacemaker. The Cordis notification letters to treating physicians reveal a production problem, but the plaintiff has not shown that any design defect caused this model 334A pacemaker to malfunction. Likewise, the plaintiff's reliance on statements made by company whistleblowers is unpersuasive, since the statements are much too general to apply to the facts of this case. Moreover, reliance on the 1988 plea agreement between the United States and Cordis as evidence is unpersuasive since that document does not designate any defects with the Cordis pacemaker model 334A, serial number 11075. The only relevant evidence before the Court with respect to this pacemaker shows that its batteries ran out as Cordis expected they would.

Cordis' most persuasive argument for summary judgment is that the plaintiff cannot produce evidence such that a reasonable jury could find that the pacemaker was defective or unreasonably dangerous. After examining the evidence in a light favorable to plaintiffs, the Court concludes that the facts present such a one-sided case that Cordis must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511. Thus, the claims for strict liability in tort, negligence, and breach of implied warranty are dismissed.[5]

## C. *Express Warranty and Misrepresentation*

The plaintiff's claims for express warranty and misrepresentation explicitly fall out-

---

**5.** Since the plaintiff has not shown that model 334A was defective or unreasonably dangerous, the Court does not have to address the issue of whether a pacemaker is an "unavoidably unsafe" product within the meaning of Restatement (Second) of Torts § 402(A) comment K (1965). *See, e.g., Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1231–32 (4th Cir.1984) (holding that pacemakers are unavoidably unsafe products within the scope of comment K). Tennessee courts have recognized the concept of unavoid-

ably unsafe products in products liability actions. *See, e.g., Laws v. Johnson*, 799 S.W.2d 249, 252 (Tenn.App.1990) (citing *Brooks*); *Daniels v. Combustion Engineering, Inc.*, 583 S.W.2d 768, 772 (Tenn.App.1978). A number of medical devices that are prescribed or inserted by a physician, as is a pacemaker, have been held to fall into the "unavoidably unsafe" category. *See, e.g., McPheron v. Searle Laboratories, Inc.*, 888 F.2d 31 (5th Cir.1989) (listing cases).

side the scope of T.C.A. § 29–28–105(a). T.C.A. § 29–28–105(c) provides that: "The provisions of this section do not apply to an action based on express warranty or misrepresentation regarding the chattel." In contrast to the strict liability argument raised by the plaintiff, if she can establish a breach of an express warranty or misrepresentation, recovery may be had even though the product is not defective. Thus, the Court will examine the validity of these two claims.

Plaintiff relies on several shreds of evidence to support its claims. First, it argues that Tatum's model 334A pacemaker was warranted and represented to last for nine to twelve years. Plaintiff's Additional Response, January 10, 1991, Collective Exhibit 1, Exhibit 12. In particular, Tatum stated that "When I purchased the Model 190A and the Model 334A Cordis pacemakers I was told that they would last 9 to 12 years and that when the battery started running out of power they would do so gradually so that I would have time to replace the battery cells. These representations were false because the pacemaker failed suddenly and without any warning and almost killed me each time." Affidavit of Milledge D. Tatum.

Plaintiff also quotes from a Cordis advertisement expounding that "the design, production and distribution of our life-sustaining devices is undertaken with the highest degree of dedication and skill.... The commitment of Telectronics and Cordis Pacing Systems to nothing but pacing systems is your assurance of nothing but the best." Plaintiff's Response, Collective Exhibit 3 at 1.

In response, Cordis argues that both of these claims should be dismissed since the plaintiff has failed to identify any specific representations by Cordis upon which she relied to her detriment.

■ First, the document cited by the plaintiff to support her statement that the pacemaker would last nine years describes the predicted life of the model 190A Omni-Stanicor Lambda pacemaker. The Court previously has dismissed that model pacemaker from this action. As a result, the

plaintiff's evidence has absolutely no bearing on this motion for summary judgment. By contrast, the booklet about model 334A given by Cordis to physicians for distribution to their patients does not contain any such battery life timetable. And Cordis has introduced documentary and affidavit evidence that the service life prediction for the model 334A was five years based on clinical experience.

■ Second, Milledge Tatum's statement about a nine to twelve year warranty is unidentified hearsay. Fed.R.Civ.P. 56(e) requires the production, at the summary judgment stage, of evidence "as would be admissible in evidence." Expounding on Rule 56 in *Celotex*, however, the Supreme Court rejected the notion that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Hearsay evidence may be considered by the Court in response to a motion for summary judgment as long as the out-of-court declarant would be available to present the evidence through direct testimony. But in this case, the out-of-court declarant is unidentified and since Tatum is deceased, he is unable to present the evidence through direct testimony. Given the countervailing evidence presented by the defendant, Tatum's hearsay affidavit is insufficient to present a genuine factual issue as to whether the defendant breached an express warranty or misrepresented its product.

■ Finally, the quote identified by the plaintiff from a Cordis advertisement promising users a high quality product is so general as to be worthless. That evidence pales when compared to the detailed brochures about model 334A pacemakers provided by Cordis to physicians and model 334A users. Those brochures tout a high quality product but also note that implanted pacemakers must be replaced eventually and monitored closely throughout their life.

Given that the plaintiff has not established that Cordis either has supplied false information about model 334A to the Tatums or that the Tatums relied on such

alleged misrepresentations, the claims for express warranty and misrepresentation also should be dismissed.

An appropriate order will be so entered.

## ORDER

For the reasons mentioned in the accompanying Memorandum, the Motion for Summary Judgment by Cordis Corporation is GRANTED.

IT IS SO ORDERED.