Michael Gene **SHOEMAKE, Sr.,** et al.

v.

**OMNIQUIP INTERNATIONAL, INC.,** et al.

Court of Appeals of Tennessee, at Jackson.

Nov. 18, 2003 Session.

Dec. 30, 2003.

Permission to Appeal Denied by Supreme Court June 14, 2004.

Thomas D. Yeaglin, Memphis, For Appellants, Michael Gene Shoemake, Sr., and Joy Shoemake.

Michael B. Neal and Sara Falkinham, Memphis, For Appellees Omniquip Textron, Inc., and Trak International, Inc.

Dale H. Tuttle and R. Douglas Hanson, Memphis, For Appellee, United Equipment, Inc.

## OPINION

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

This is a products liability wrongful death case. Plaintiffs' decedent died when he fell from a job-rigged box that was being lifted by a telescoping fork lift to the fourth floor of a job site. Plaintiffs sued the lessor, the manufacturer of the lift, and the manufacturer's parent company, asserting that the lift was defective and unreasonably dangerous, and that the manufacturer and parent company failed to adequately warn. The trial court granted summary judgment to all three Defendants. Plaintiffs appeal. We affirm.

In November of 1997, Zellner Construction ("Zellner") was hired to construct a Fairfield Inn Hotel at the corner of American Way and Perkins in Memphis, Tennessee (the "Site"). Zellner served as the general contractor at the Site. Zellner employed Crenshaw Plumbing Company ("Crenshaw") as one of its subcontractors. On or about March 18, 1998, Zellner leased a Sky Trak Telescopic Handler Model 10054 (the "Sky Trak") from United Equipment, Inc. ("United"). The Sky Trak was purchased by United from the manufacturer, Trak International, Inc. ("Trak"). Trak is a wholly owned subsidiary of Omni Quip Company, Inc. ("Omni Quip," and together with Trak and United, "Defendants," or "Appellees").[1] The Sky

---

1.  In the original Complaint filed in this matter, Trak International, Inc. was incorrectly named as T. Trak International, Inc. The Complaint was subsequently modified by Consent Order entered January 26, 2000 to reflect the correct name Trak International, Inc. We also note that the record reflects that Omni Quip Company, Inc.'s correct name is Omni-

Trak is a rough terrain fork lift truck designed for material handling. It is capable of lifting up to 10,000 pounds into the air and capable of lifting substantial weight up to fifty-four feet above ground. Although the Sky Trak is principally designed to lift materials and equipment at a job site, its utility may be enhanced by the use of various attachments. These attachments may be used for such purposes as breaking concrete, lifting cement, and lifting personnel. The Sky Trak at issue in this case had no such attachments. Zellner used the Sky Trak for the purpose of trash removal at the Site.

On November 18, 1998, Michael Gene Shoemake, Jr. ("Shoemake," or "Decedent") was employed by Crenshaw. At that time, Scott Greer was also employed by Crenshaw. Following their lunch break, Messrs. Shoemake and Greer had some pipe to transport from the ground level of the Site to approximately the fourth floor. To that end, Mr. Greer got into the driver's seat of the Sky Trak and Mr. Shoemake took some pipe and got into a wooden box that was then lifted by the front forks of the Sky Trak to the fourth floor.[2] The box was not secured to the forks of the Sky Trak. When Mr. Shoemake attempted to push the bundle of pipe from the box, the box teetered. Both the box and Mr. Shoemake fell from approximately four (4) stories up to the ground. The injuries sustained in this fall resulted in Mr. Shoemake's subsequent death.

On October 21, 1999, Michael Gene Shoemake, Sr. and Joy Shoemake, as Co–Administrators of the Estate of Michael Gene Shoemake, Jr. ("Plaintiffs," or "Appellants") filed a wrongful death suit against the Defendants. The Complaint alleges that Trak had a duty to manufacture a personnel-lift attachment or to make the equipment function safely as a personnel-lift because it was capable of lifting personnel above the ground and it was foreseeable that the Sky Trak could be adapted for this purpose. According to the Complaint, the Sky Trak is "incomplete" since it is capable of being used for lifting personnel with a poorly rigged trash box. The Complaint further alleges breach of a warranty of fitness for a particular purpose and breach of warranty of merchantability. The Complaint also alleges that the warning displayed on the Sky Trak that shows a figure falling and reads: "Carrying personnel can result in death or serious injury. Use an Approved Work Platform to lift or lower personnel. Machine must not be driven with personnel in the work platform" is inadequate since the warning does not define what is meant by "Approved Work Platform." In short, from our reading of the Complaint, it appears that Plaintiffs advanced three theories of products liability in this case: (1) Defective condition, (2) Unreasonably dangerous, and (3) Duty to warn.

Following discovery, all three Defendants filed motions for summary judgment. After a hearing on September 6, 2002, the Defendants' motions for summary judgment were granted by Order entered September 12, 2002. Plaintiffs filed a Motion to Alter or Amend, which

---

quip International, Inc. The Consent Order does not, however, correct Omni Quip's name. Therefore, for purposes of this appeal, we will use the corrected name of Trak International, Inc. ("Trak") but will use the name Omni Quip Company, Inc. ("Omni Quip") as listed in the original Complaint.

2. This wooden box was "job rigged" and was not a product manufactured by Trak. The dimensions of the box were approximately four (4) feet wide, eight (8) feet long, and four (4) feet high. The four (4) foot high box was closed on all but one side, i.e. ceiling, floor, and walls on sides and back.

was denied by Order entered November 8, 2002.

Plaintiffs appeal and present two issues for review in their brief which in essence is the single issue: whether the trial court erred in granting summary judgment to each of the defendants.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall,* 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 210–11 (citations omitted) (emphasis in original).

**3.** T.C.A. § 29–28–102(6) defines "Product liability action" as follows: " ... all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limit-

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain,* 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk,* 954 S.W.2d 722, 723 (Tenn.1997).

*Appropriateness of Grant of Summary Judgment to United*

■ As noted above, the Sky Trak at issue was manufactured by Trak, whose parent company is Omni Quip. United merely leased the Sky Trak to Zellner but did not construct or manufacture any part thereof, including the wooden box that was used to lift Mr. Shoemake. T.C.A. § 29–28–106 (2000) of the Products Liability Act reads, in relevant part, as follows:

**29–28–106. Seller's liability.—**

\* \* \*

(b) No "product liability action," as defined in § 29–28–102(6),[3] when based on the doctrine of strict liability in tort, shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user or consumer unless the seller is also the manufacturer of the product or the manufacturer of the part

ed to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever."

thereof claimed to be defective, or unless the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee or service cannot be secured by the long-arm statutes of Tennessee or unless such manufacturer has been judicially declared insolvent.

T.C.A. § 29–28–102(7) (2000) expands the term "Seller," as used in T.C.A. § 29–28–106, to include the following:

> "Seller" includes a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption. "Seller" also includes a lessor or bailer engaged in the business of leasing or bailment of a product . . .

See also *Baker v. Promark Prods. W., Inc.*, 692 S.W.2d 844 (Tenn.1985).

T.C.A. § 29–28–106, when read in conjunction with the definition of Seller found at T.C.A. § 29–28–102(7), clearly permits an action against the lessor only when the lessor is also the manufacturer, or when the manufacturer cannot be located and served, or when the manufacturer has been judicially declared insolvent. None of these criteria are satisfied in the instant case. The lessor United manufactured neither the Sky Trak nor the wooden box. Furthermore, the Plaintiffs have located and procured service against the manufacturer, Trak, and its parent company, Omni Quip. Accordingly, any of the product liability theories propounded by Plaintiffs in this action should fail as against United since United is not a proper party under T.C.A. § 29–28–106(b). Consequently, summary judgment in favor of United was properly granted.

*Appropriateness of Grant of Summary Judgment to Trak and Omni Quip*

As noted above, Plaintiffs advanced three theories of product liability in this case: (1) Defective condition, (2) Unreasonably dangerous, and (3) Duty to warn. We will address the appropriateness of summary judgment as it relates to each of these theories.

*Defective Condition/Unreasonably Dangerous*

T.C.A. § 29–28–105 (2000) reads, in relevant part, as follows:

> **29–28–105. Determination of defective or dangerous condition.**—(a) A manufacturer or seller of a product shall not be liable for injury to a person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller.
>
> (b) In making this determination, the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market, rather than at the time of injury, is applicable. Consideration is given also to the customary designs, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products.

Thus, a plaintiff must prove that the product was either defective or unreasonably dangerous at the time it left the control of the manufacturer or seller, regardless of the legal theory relied upon. *Fulton v. Pfizer Hosp. Products Group, Inc.*, 872 S.W.2d 908, 911 (Tenn.App.1993). T.C.A. § 29–28–102(2) (2000) defines defective condition as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." A product is unreasonably dangerous if it, as defined in T.C.A. § 29–28–102(8) (2000), is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the

ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that the manufacturer or seller knew of its dangerous condition." As cited above, T.C.A. § 29–28–105(b) provides that, in determining whether a product is defective, "the state of scientific and technological knowledge available to the manufacturer or seller at the time the product was placed on the market ... is applicable." Consideration should also be given "to the customary design, methods, standards and techniques of manufacturing, inspecting and testing by other manufacturers or sellers of similar products." *Id.*

As a general rule, an injury in and of itself is not proof of a defect and thereby does not raise any presumption of defectiveness. *Fulton,* 872 S.W.2d at 911 (citing *Gates v. Ford Motor Co.,* 494 F.2d 458, 459 (10th Cir.1974); *Mullins v. Seaboard Coastline Ry. Co.,* 517 S.W.2d 198, 201 (Tenn.Ct.App.1974)). Consequently, it is not enough to show that the product caused the plaintiff's injury or was involved in it. *Whaley v. Rheem Mfg. Co.,* 900 S.W.2d 296, 300 (Tenn.Ct.App.1995). Rather, "[t]he burden is upon the plaintiff to 'show that there is something wrong with the product.'" *Fulton,* 872 S.W.2d at 911 (quoting *Tatum v. Cordis Corp.,* 758 F.Supp. 457, 461 (M.D.Tenn.1991)). A departure from the required standard of care is not demonstrated by simply showing that there was a better, safer, or different design which might have avoided the injury. *Kerley v. Stanley Works,* 553 S.W.2d 80 (Tenn.Ct.App.1977). A manufacturer is not required to incorporate the ultimate safety features in a product. The manufacturer is not an insurer of its product. It is not required to design a perfect or accident-proof product. *Curtis v. Univer-*

*sal Match Corp.,* 778 F.Supp. 1421 (E.D.Tenn.1991).

From a review of the record, we find no proof that the Sky Trak was defective or unreasonably dangerous. In the simplest of terms, Plaintiffs' complaint is that Trak should have made a personnel-lift attachment come standard with every Sky Trak sold since someone might want to lift personnel at some point in the useful life of the Sky Trak. Under the authority outlined above, we cannot agree with Plaintiffs' reasoning. Plaintiffs have offered only suggestions but have presented no proof that Trak or Omni Quip failed to employ or follow proper manufacturing procedures or that the design of the Sky Trak was deficient. No proof was offered that the lift was designed or manufactured improperly or that Trak violated some standard of care in the design or manufacture of the machine. Plaintiffs offered no proof concerning how, from what material, and to what specifications the proposed personnel-lift should be made or adapted for use with this product. Furthermore, there is no evidence in the record that the manufacturer of the Sky Trak deviated from acceptable standards of quality or conduct in the industry.

Although the trial court's Order does not specify the basis for granting summary judgment, it appears that summary judgment was granted because there are no genuine issues of material fact in that Plaintiffs, as discussed above, failed to provide any proof that a defect in the Sky Trak caused the death of Mr. Shoemake. "Summary judgment is required if ... the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Tatum v. Cordis Corp.,* 758 F.Supp. at 461 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548,

2552, 91 L.Ed.2d 265 (1986)). *See also Blair v. Allied Maintenance Corp.,* 756 S.W.2d 267, 270 (Tenn.Ct.App.1988).

*Duty to Warn*

■ Although the Sky Trak at issue in this case had a warning posted on it, which depicted a falling figure and the words: "Carrying personnel can result in death or serious injury. Use an Approved Work Platform to lift or lower personnel. Machine must not be driven with personnel in the work platform," Appellants contend that this warning is inadequate since the warning does not define what is meant by "Approved Work Platform."

T.C.A. § 29–28–105(d) (2000) states that "[a] product is not unreasonably dangerous because of a failure to adequately warn of a danger or hazard that is apparent to the ordinary user." The comments to § 402A of *Restatement (Second) of Torts* recognize that the law does not impose a duty to warn of widely known risks, to wit:

> [S]eller is not required to warn with respect to products [when the] potentiality of danger is generally known and recognized....
>
> Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

*Id.* at cmt. j.

■ Where the facts are undisputed, whether a duty to warn exists is determined as a matter of law and, when the danger is open and obvious, no duty to warn is imposed. *See e.g., Jamieson v. Woodward & Lothrop,* 247 F.2d 23 (D.C.Cir.1957); *Bojorquez v. House of Toys, Inc.,* 62 Cal.App.3d 930, 133 Cal. Rptr. 483 (1976), and under the Restatement version of strict liability, as cited above, where the danger is evident to most users of a product, there is no duty to warn an occasional, inexperienced user. *Baker v. Stewart Sand & Material Co.,* 353 S.W.2d 108 (Mo.App.1961); *Katz v. Arundel–Brooks Concrete Corp.,* 220 Md. 200, 151 A.2d 731, 78 A.L.R.2d 692 (1959); *Simmons v. Rhodes & Jamieson, Ltd.,* 46 Cal.2d 190, 293 P.2d 26 (1956); *Dalton v. Pioneer Sand and Gravel Co.,* 37 Wash.2d 946, 227 P.2d 173 (1951).

The undisputed and relevant facts concerning this issue are that Trak did not manufacture or, in any way, condone the use of the wooden box with this piece of equipment. It is undisputed that Zellner, not Trak or Omni Quip, rigged this trash box for use at the Site. It is also undisputed that Messrs. Shoemake and Greer were not regular, or even authorized, users of the Sky Trak.

■ From our review of the entire record, it appears that the hazards of using a job-rigged, unsecured box to lift personnel was open and obvious. Moreover, Trak did not manufacture or in any way condone the use of this wooden box as a personnel lifter. The facts are clear that it was Zellner, not Trak or Omni Quip, that rigged the box. Nonetheless, Trak and Omni Quip did warn that "[c]arrying personnel can result in death or serious injury," that operators should "[u]se an Approved Work Platform to lift or lower personnel," and that the "[m]achine must not be driven with personnel in the work platform." To agree with Appellants that these warnings are inadequate for their vagueness would be to hold Trak and Omni Quip to standards outside the purview of our current law. No manufacturer or seller can be required to, nor logistically do they have the ability to, imagine every unsafe scenario in which their product could be used by every consumer. To this end, our law requires manufacturers to warn of hidden and unknown dangers in

their product; however, as to some risks, manufacturers are entitled to rely upon the common sense and good judgment of consumers and users. *See, e.g., Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690, 693 (Tenn.1984). The accident at issue here clearly falls into the latter of the two categories outlined in *Pemberton.* Consequently, the warning placed on the Sky Trak by Trak and Omni Quip was adequate.

■ In their second issue for review, Appellants assert that the trial court erred in relying upon comparative fault principles, rather than upon the standard for summary judgment, in reaching its decision.

From our reading of the record, and in particular the transcript of the hearing on the motions for summary judgment and the Order granting those motions, we cannot find that the trial court used an improper standard in deciding this case. As support for their contention that the trial court used an improper standard, Appellants cite to several passages from the transcript of the hearing, including the following:

> THE COURT: The difference is the extraordinary—I hesitate to use the word "preposterous," but that's what it's approaching—fact circumstance described to the Court such that a clear inference could be drawn that even if an alternative means had been available, which would have required some time and effort, these folks might not even have used it ... and the man's conduct—of course everything you say the Court is in agreement with, but it is a balancing, and I just don't believe under the set of facts that is not in controversy that any—
>
> *       *       *

THE COURT: These jurors could not, under the uncontroverted facts and circumstances of this case, find that the manufacturer could be fifty-one percent negligent because what they are going to have to find is that your client behaved in such an incredible way that he brought this upon himself under any rationalization that could be offered.

MR. YEAGLIN [attorney for Plaintiffs]: I have a presumption provided by law in my client's favor. I don't know if the Court is aware of that. It's an old—

THE COURT: My point is I don't believe you can overcome the facts that are not in controversy.

MR. YEAGLIN: But I have a presumption going to me because of the death that my man was using due care. It's that simple. That's what the law says. It's said that since the early 1940's.

THE COURT: If the facts clearly indicate that he was not ...

MR. YEAGLIN: Ma'am?

THE COURT: If the facts clearly indicate he was not using due care, Mr. Yeaglin?

*       *       *

THE COURT: Mr. Yeaglin, let me ask you a question. Assuming, arguendo, that I don't grant this motion and you get to trial and there will be an obvious request for a jury charge on assumption of the risk. How are you going to overcome that when all the man had to do was say to anybody, a co-worker, his boss, hey, I could die if I use this thing the way I'm contemplating using this thing? What does it mean, platform?

*       *       *

THE COURT: Well, the Court is fully cognizant that it is incredibly rare to be sustained on a motion for summary judgment in a negligence case; and but for the incredible fact situation present-

ed to the Court on this one, the reading and effort and rumination that this particular motion required, Mr. Yeaglin, but this is just such an extraordinary fact-driven negligence case that the Court felt you just couldn't get that fifty-one—you couldn't get a sufficient percentage from the jury to allow you to recover.

MR. YEAGLIN: Well, are you saying that you're putting that on a contributory negligence basis or comparative negligence—

THE COURT: Comparative fault. I'm saying—

MR. YEAGLIN: But that's—

THE COURT: I just don't see, Mr. Yeaglin—you can argue with the Court on this—how those jurors are going to come back for your client given the actions that he took.

In concluding that summary judgment was appropriate, the trial court made the following, additional statements:

THE COURT: Mr. problem is this. Every instinct that I have tells me that it is appropriate to grant the motion for summary judgment. On the other hand, no judge is infallible; and I, as a judge, am certainly aware of the cultural propulsion, I guess you could say in our society, to lean away from personal responsibility. As I view our society, we are in a time of crisis as far as personal responsibility is concerned; and while I—and every instinct that I have tells me it's appropriate to grant the motion for summary judgment—simply wonder if I'm in step with our culture?

MR. TUTTLE [attorney for United]: Well, I think the way to go with this, Your Honor, is to look at it strictly for what it is. It's a motion before the Court to determine a case based upon a question of law. Is there any disputed fact that would allow the case to go to the jury? Has the plaintiff—has the

opponent to the motion presented any question of material fact . . .

THE COURT: The only thing he said is could a jury reasonably conclude from the manufacturer's warning that was very plainly plastered on the piece of machinery right in front of the deceased—not only did he have opportunity to see it when he stepped on, he had opportunity to be looking at it as he was raising up the four stories. Could he have concluded, as Mr. Yeaglin argued, that he was on a platform? That's what Mr. Yeaglin is saying.

MR. TUTTLE: . . . I still go back to what Your Honor initially said. The facts are so incredible, there is no way he can be less that fifty-one percent—or fifty percent negligent . . .

* * *

MR. YEAGLIN: When the order is prepared, I would like to put in there exactly what you [the trial court] said, which is you don't think that a jury—you're basing it [the trial court's decision] on comparative negligence, and I'd like to put that in there.

THE COURT: I'm not saying that's the only basis. You can prepare your order and each of you can list the facts.

Reading these passages in the context of the entire transcript, we find that the trial court was not weighing evidence per se. Rather, the trial court was presented with undisputed evidence and, from that undisputed evidence, concluded that a jury could only reach one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). In short, there is nothing in the transcript of the hearing to indicate that the trial court deviated from the appropriate standard. Moreover, the trial court's Order granting the Defendants summary judgment clearly reflects the standard contained in Rule 56 of the Tennessee Rules of Civil Procedure when it states that: " . . . there is no genuine issue as to any

material fact and ... the Defendants are therefore entitled to a judgment in their favor as a matter of law."

However, even if we allow that the trial court weighed the evidence in making its decision in this case, or otherwise deviated from the standard of review outlined in Tenn. R. Civ. P. 56, we nonetheless find that the record supports the granting of summary judgment in this case. It is well settled that this Court will affirm the trial court's grant of summary judgment if it finds that the trial court reached the correct result, "irrespective of the reasons stated." *Clark v. Metropolitan Gov't of Nashville and Davidson County*, 827 S.W.2d 312, 317 (Tenn.Ct.App.1991); *see also Wood v. Parker*, 901 S.W.2d 374, 378 (Tenn.Ct.App.1995).

For the foregoing reasons, we affirm the Order of the trial court, granting summary judgment to Trak, Omni Quip, and United. Costs of this appeal are assessed against Appellants, Michael Gene Shoemake, Sr. and Joy Shoemake, as Co–Administrators of the Estate of Michael Gene Shoemake, Jr., and the Estate of Michael Gene Shoemake, Jr., and their surety.