IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 10, 2003 Session

PATRICK BEAUDREAU, ET AL. v. GENERAL MOTORS
ACCEPTANCE CORPORATION

Appeal from the Circuit Court for Sevier County
No. 2000-186-IV     O. Duane Slone, Judge

FILED APRIL 29, 2003

No. E2002-00850-COA-R3-CV

Patrick Beaudreau ("Plaintiff") purchased a new car from Thomas-Hill Auto Center ("Dealer"). In order to finance the purchase of the vehicle, Plaintiff signed a retail installment sales contract ("Contract") at an annual percentage rate ("APR") of 13.5%. The Contract listed Dealer as the creditor. General Motors Acceptance Corporation ("GMAC") purchased the Contract from Dealer at a rate of 11.25% ("buy rate"). GMAC paid Dealer the difference between the APR and the buy rate ("dealer reserve"). Plaintiff sued GMAC claiming GMAC had conspired with Dealer to defraud him by not revealing the dealer reserve and the buy rate, or what Plaintiff claims is the "real interest rate." GMAC filed a motion for summary judgment. The Trial Court found the business practices of GMAC detailed in the record are not unlawful or fraudulent and granted summary judgment. Plaintiff appeals, asserting that the Trial Court erred in its treatment of Plaintiff's expert's affidavit and in granting summary judgment. We vacate the grant of summary judgment and remand.

Tenn. R. App. P. 3 Appeal as of Right;
Judgment of the Circuit Court Vacated; Case Remanded.

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Gordon Ball, Knoxville, Tennessee, for the Appellant, Patrick Beaudreau.

Stephen G. Anderson and Andrew L. Colocotronis, Knoxville, Tennessee, for the Appellee, General Motors Acceptance Corporation.

# OPINION

## Background

Plaintiff and his fiancee went to Dealer to purchase a new Pontiac Sunfire. Plaintiff previously had shopped around and test driven different vehicles. Plaintiff had not, however, reviewed any GMAC advertisements prior to purchasing the Sunfire. Plaintiff agreed to purchase the Sunfire for the sticker price on the car's window plus tax, tag, and title fees. Plaintiff chose not to negotiate the price of the vehicle. Plaintiff filled out some paperwork in connection with the sale while waiting for his fiancee's father to arrive at the dealership. Plaintiff's fiancee's father was to cosign for the car. Dealer asked to investigate Plaintiff's credit while they waited, and Plaintiff agreed. Dealer then told Plaintiff the credit check revealed a cosigner was not necessary.

Plaintiff testified he assumed the financing would be through GMAC because he was purchasing a GM vehicle. However, Dealer never told Plaintiff the financing would be through GMAC. Plaintiff testified that while he waited in the lobby, Dealer's finance manager "punched everything into the computer system." The salesman then came out and told Plaintiff "We can give you the 13 and a half percent as the rate we can give you." Plaintiff testified Dealer gave him a printout titled "retail sales agreement" that showed the APR and the amount of payments. While the Contract has GMAC printed on the document in several places, Dealer is listed as the creditor. The only parties to the Contract are Plaintiff and Dealer. Plaintiff did not attempt to negotiate any of the finance terms. Plaintiff signed the Contract and drove the car off the lot. Plaintiff never spoke to anyone at GMAC either before or after signing the Contract.

The Contract contains the following statement:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Dealer contacted two other financing entities offering to sell the Contract to them. Both of these other entities refused to buy Plaintiff's Contract. Dealer then contacted GMAC which purchased the Contract from Dealer at the buy rate of 11.25%, which is two and a quarter percentage points less than the APR Plaintiff had agreed to pay. GMAC then paid Dealer the difference between the APR listed on the Contract and the buy rate.

Dealer's representative testified that often they must guess the rate at which they will be able to sell a contract. Dealer's computers are not tied directly to GMAC's computers and Dealer does not have the ability to call up GMAC's rates on the Dealer computers. Rather, Dealer receives

periodic faxes from GMAC setting out the different tiers GMAC uses to assign rates. Dealer's representative also testified that the fact a Contract has GMAC printed on it does not require it to be sold, or assigned, to GMAC by Dealer. There are other lenders who will accept an assignment of a contract such as the one signed by Plaintiff even though the contract has GMAC printed on it.

Plaintiff filed suit against GMAC in March of 2000, alleging GMAC had conspired with Dealer to defraud him by not revealing the dealer reserve and the buy rate, or what Plaintiff claims is the "real interest rate" from GMAC. Plaintiff also filed a motion to certify this suit as a class action. GMAC filed a motion for summary judgment. Plaintiff opposed the motion for summary judgment, in part, by producing the affidavit of an expert in the field of automotive financing. The Trial Court granted GMAC's motion for summary judgment holding the business practices of GMAC as set out in the record are neither unlawful nor fraudulent. The motion for certification of a class never was heard. Plaintiff appeals.

## **Discussion**

Although not stated exactly as such, Plaintiff raises two issues on appeal: 1) whether the Trial Court erred by failing to consider the expert affidavit produced by Plaintiff in opposition to the motion for summary judgment; and 2) whether the Trial Court erred in granting summary judgment.

As our Supreme Court has instructed:

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall,* 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish

-3-

an affirmative defense. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d 585,588 (Tenn. 1998); *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d at 588; *Robinson v. Omer,* 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88-89 (Tenn. 2000) (footnote omitted). "The court is not to 'weigh' the evidence when evaluating a motion for summary judgment." *Byrd,* 847 S.W.2d at 211.

Plaintiff argues the Trial Court erred by failing to consider the expert affidavit Plaintiff produced in opposition to the motion for summary judgment. The record on appeal supports Plaintiff's position that the Trial Court impermissibly weighed the expert's affidavit. During the hearing on the motion for summary judgment, the Trial Court stated to Plaintiff's counsel, "You'd better have some - - there'd better be some facts in the record to support [your expert's] opinion, and there's not in yours."

"In general, questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn. 1997). Thus, a trial court must act as a gatekeeper in determining whether expert testimony is admitted. Courts "shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." *Id.* at 264 (quoting Tenn. R. Evid. 703). *See also* Tenn. R. Civ. P. 56.06 (setting out rules governing use of expert affidavits on summary judgment and stating "Expert opinion affidavits shall be governed by Tennessee Rule of Evidence 703); Tenn. R. Evid. 703 (providing "The court shall disallow [expert] testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness."). Once the expert testimony has been admitted, however, the court must not weigh the evidence when evaluating a motion for summary judgment. *Byrd,* 847 S.W.2d at 211.

No challenge to the admission of Plaintiff's expert affidavit was raised. Nor did the Trial Court find *sua sponte* that the affidavit contained opinions based upon underlying facts or data that indicated a lack of trustworthiness. There is no showing in the record that the affidavit was not properly admitted. In short, there was no determination by the Trial Court pursuant to Tenn. R. Evid. 703 to disallow this affidavit testimony because the underlying facts or data indicate lack of trustworthiness. Thus, the Trial Court was required to consider the expert affidavit without weighing it, just as it did not weigh any of the other evidence before it in evaluating the motion for summary judgment. Additionally, the Trial Court had to view all the evidence, including the affidavit, in the light most favorable to Plaintiff and also had to draw all reasonable inferences in Plaintiff's favor. *See Staples*, 15 S.W.3d at 89.

GMAC's brief acknowledges this improper treatment of Plaintiff's expert affidavit, without admitting that it was improper, by stating the "[Trial Court] was well within his discretion to give [Plaintiff's expert's] affidavit no weight." While acknowledging the Trial Court decided what weight to give Plaintiff's expert's affidavit, GMAC states it was proper for the Trial Court to do so but cites no authority in support of this position. We disagree. *See Byrd*, 847 S.W.2d at 211.

We hold the Trial Court erred by impermissibly weighing Plaintiff's expert affidavit. We in no way suggest that Plaintiff's expert affidavit, taken with the rest of the record, is or is not sufficient to overcome the motion for summary judgment. We hold only that the Trial Court shall reconsider the motion for summary judgment by viewing all the evidence before it, including the affidavit, in compliance with the Rule 56 standards as set by our Supreme Court. We believe it is appropriate for the Trial Court, rather than this Court, to make this initial determination on this motion for summary judgment, and, therefore, we vacate the grant of summary judgment and remand this case to the Trial Court for reconsideration of the motion for summary judgment in accordance with our Opinion. Our holding on this issue pretermits Plaintiff's second issue.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Trial Court for such further proceedings as are required consistent with this Opinion. The costs on appeal are assessed against the Appellee, GMAC.

_____

D. MICHAEL SWINEY, JUDGE