# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 4, 2016

## JONATHAN D. GRIGSBY v. ALEXANDRA ALVIS-CRAWFORD

**Appeal from the Juvenile Court for Tipton County**
**No. 14-JV-148     William A. Peeler, Judge**

_____

**No. W2016-00393-COA-R3-JV – Filed January 31, 2017**

_____

This custody dispute involves the child born to Jonathan D. Grigsby (Father) and Alexandra Alvis-Crawford (Mother). In July 2014, the parties were residing together when Mother moved out of the house with the child and refused to let Father see or talk to him. Shortly thereafter, Mother had medical issues and was admitted to the hospital where she remained until September 2014. During this time, the child lived in the home of the maternal grandparents of the child. Because the maternal grandparents refused to allow Father to see or speak with the child, he filed a petition seeking an ex parte order for immediate custody of his minor child. Based on Father's petition, the trial court entered an order finding that the grandparents were unlawfully keeping the child from Father. The trial court gave Father immediate temporary custody of the child. The trial court did not make a permanent custody determination at that time. In December 2014, Mother filed a petition for custody. In January 2016, the trial court held a hearing on Father's amended emergency petition and Mother's petition. The trial court found that it is in the best interest of the child to stay with Father. Accordingly, the court designated Father as the primary residential parent. Mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Edwin C. Lenow, Memphis, Tennessee, for appellant, Alexandra Alvis-Crawford.

Paola Palazzolo-West, Memphis, Tennessee, for the appellee, Jonathan D. Grigsby.

# OPINION

## I.

Mother and Father were never married to each other. Mother has one child from a previous marriage. The parties had a child together in August 2011. In July 2014, while Father was at work, Mother moved out of Father's home with the child. Mother refused to allow Father to see the child. A few days later, Mother went into septic shock and was hospitalized until the end of September 2014.

When Mother entered the hospital, the child stayed with the maternal grandparents. During the time Mother was hopitalized, the maternal grandparents refused Father's requests to visit or speak with the child. Despite Father's continuing efforts to make arrangements to see the child, the grandparents told him that he would have to wait until Mother got out of the hospital.

Due to his inability to contact his child, Father filed an emergency petition for an ex parte order for immediate custody of his minor child. In the petition, Father alleged the following:

> That on or about July 1, 2014 and without [his] knowledge or approval, Mother left their residence and took their son with her.
>
>         \*      \*      \*
>
> That upon information and belief, the maternal grandparents . . . have unlawful physical custody of the minor child.
>
> That despite [his] numerous requests, the maternal grandparents refused and continue to refuse to surrender the child back to [him].
>
> That since July 6, 2014, [he] has been denied any and all parenting time with the child, including phone calls.

(Paragraph numbering in original omitted.)

Based on Father's petition, the trial court entered an order, finding that Father is willing and capable of caring for the child. The court also found that the maternal grandparents were unlawfully keeping the child from Father and interfering with his parenting time. Accordingly, the trial court awarded Father immediate temporary custody of the child and set a hearing to determine permanent custody.

2

Mother filed a petition for custody in December 2014. In the petition, she alleged that Father is not a fit person to care for the child due to his history of drug use. She also asserted that it is in the best interest of the child to be with her and the child's half-brother. Following a hearing in January 2016, the court found that it is in the best interest of the child to stay with Father. As a consequence of this, the court designated Father as the primary residential parent. The court also imposed a visitation schedule and ordered that the parties pay their own attorney's fees.

## II.

Mother raises the following issues, as quoted from her brief:

> Whether the evidence supports the finding of the [c]ourt that [Father] is the most stable.
>
> Whether the [c]ourt erred in separating brothers.

Father raises one issue: "Whether the court erred in denying [his] request for attorney['s] fees."

## III.

In this non-jury case, we review the trial court's findings of fact upon the record with a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). We review a trial court's conclusions of law under a de novo standard with no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

However, in this matter, our de novo review is subject to "the well-established principle that a trial court has wide discretion in matters of custody and visitation." *Jahn v. Jahn*, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996) (citing *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)) (italics omitted). "Because decisions regarding parenting arrangements are factually driven and require consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges." *Armbrister*, 414 S.W.3d at 693. "[T]he trial court's decision will not ordinarily be reversed absent some abuse of [its] discretion[.]" *Jahn* at 942 (citation omitted). A trial court abuses its discretion when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). "Nevertheless, discretionary decisions must

3

be based on the applicable law and the relevant facts; accordingly, they are not immune from meaningful appellate review." ***Gooding v. Gooding***, 477 S.W.3d 774, 776 (Tenn. Ct. App. 2015).

## IV.

In child custody cases, "the needs of the children are paramount; the desires of the parents are secondary." ***In re T.C.D.***, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007) (citing ***Shofner***, 181 S.W.3d at 715-16). "[Q]uestions related to custody and visitation should be directed toward[ ] promoting the child's best interest by placing him in an environment that will best serve his physical and emotional needs." ***Id.*** at 742-43. Tenn. Code Ann. § 36-6-106(a) provides as follows:

> In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:
>
> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
>
> (2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;
>
> \*     \*     \*

4

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . . ;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

$$* \qquad * \qquad *$$

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

$$* \qquad * \qquad *$$

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

"Determining a child's best interest is a 'fact-sensitive inquiry' that does not call for 'rote examination of each of the [relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case.' " **In re William K.**, No. M2014-01872-COA-R3-JV, 2015 WL 6164849, at *3 (Tenn. Ct. App., filed Oct. 20, 2015)

(citing *Solima v. Solima*, No. M2014-01452-COA-R3-CV, 2015 WL 4594134, at \*4 (Tenn. Ct. App., filed July 30, 2015)).

## V.

## A.

In this case, the trial court found that it is in the child's best interest for Father to have custody of him. The trial court's order reflects the following findings based upon the evidence:

> That both parents are fit parents.
>
> That as to T.C.A. 36-6-106(a)(10) [regarding] the importance and continuity in the child's life and the length of time that the child has lived in a stable satisfactory environment, the evidence favors the Father.
>
> That it is in the best interest of the child [to] be awarded to the Father . . . who is also being designated as the Primary Residential Parent.

(Paragraph numbering in original omitted.)

In making its ruling, the trial judge stated the following from the bench regarding the best interest analysis:

> [The child has] lived in the same place for four and a half years. And I have not heard any reason at all that the [c]ourt needs to remove him from the home that he's always been raised in . . . . The [c]ourt is to always strive for the child to have stability in his life and . . . one of the most important factors . . . is the importance of continuity in the child's life and the length of time the child has lived in a stable and satisfactory environment. So the [c]ourt believes he's been in a stable, satisfactory environment in his own home and that he shouldn't be punished and removed from . . . what he's always known because the parents can't get along. So the [c]ourt is going to rule that the father will be the primary residential parent and the mother will have standard visitation.

6

We hold that the evidence does not preponderate against the trial court's finding that it is in the best interest of the child for Father to have primary custody of him.

**B.**

To make a best interest determination, we must consider all relevant factors. Tenn. Code Ann. § 36-6-106(a). In the case before us, the child lived with both parents until Mother left with him in July 2014. She indicated that she would be back in a few days, but she never returned to Father's home and refused Father's attempts to see the child. The grandparents took custody of the child when Mother entered the hospital and also refused to allow contact between Father and the child. Father encountered difficulties with visiting or even talking with the child after Mother removed him and while he was in the custody of the grandparents. These facts are relevant because Tenn. Code Ann. § 36-6-106(a)(2) addresses "the willingness and ability of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both . . . parents." We find that Father has been willing to facilitate this parent-child relationship while Mother has hindered it at times.

The child returned to Father's home after the trial court awarded him temporary custody and has lived with Father ever since. The ability of the parent to provide a stable, satisfactory environment for the child is an important factor in determining the best interest of the child. Tenn. Code Ann. § 36-6-106(a)(10). In this case, the child has lived in a stable, satisfactory environment with Father for a significant length of time. Father has provided a stable environment for the child for the majority of his life. Removing the child from Father's home could potentially disrupt the child's life by taking him from the home life that he has always known. We hold that the child's need for stability in his life favors Father because he has provided the child with a stable, satisfactory environment for nearly his entire life.

On appeal, Mother raises the issue of "[w]hether the evidence supports the finding . . . that [Father] is the most stable." Mother argues that Father is unstable because he chose to pay the house note over health insurance for the child and because he uses drugs on occasion.

Mother has, however, misplaced her focus. Tenn. Code Ann. § 36-6-106 does not address the stability of the parent, but subsection (a) provides that "the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with . . . *the child's need for stability*[.]" (Emphasis added). Mother's emphasis on Father's lack of stability fails to address the child's need for stability and other relative factors. We are not persuaded by Mother's argument.

7

Furthermore, the trial court did not hold that Father is the most stable as Mother asserts. Rather, the trial court found that "as to the importance [of] continuity in the child's life and length of time the child has lived in a stable satisfactory environment, the evidence favors the Father."

Continuity in the child's life is an important factor for consideration. As previously noted in this opinion, the child has lived with Father almost his entire life and has continued living with Father through the course of the proceedings in the case. It would likely disrupt the child's life if he were removed from Father and placed in a different home and environment. We hold that the importance of continuity in the child's life favors Father.

Mother also argues that the trial court should not have fashioned a remedy that is contrary to the presumption against separating siblings. In regard to separating siblings, we have previously stated the following:

> Separating siblings is a drastic remedy. While there is a presumption against separating siblings, this presumption is rebuttable and must give way to other considerations in appropriate circumstances. The facts in a particular case may require that siblings be separated.
>
> \*   \*   \*
>
> When courts are required to separate siblings, they should minimize the potentially harmful effects of this separation by including liberal visitation rights and other provisions enabling the siblings to continue their relationship with each other.

*Shofner v. Shofner,* 118 S.W.3d 703, 717-18 (Tenn. Ct. App. 2004) (internal citations in original omitted). The list of the factors provided in Tenn. Code Ann. §36-6-106(a) includes "[t]he child's interaction and interrelationships with siblings, other relatives and step-relatives[.]" The preference for keeping siblings together "is simply a factor for the court to consider in determining the best interest of the child . . . . It is not a controlling factor. Courts have previously separated siblings if separation was in the best interest of the child before the court." *In re S.B.,* No. M1999-00140-COA-R3-CV, 2000 WL 575934, at \*5 (Tenn. Ct. App., filed May 12, 2000). "[T]he best interest rule trumps all other custody principles–including the one generally disfavoring separation of siblings." *Rice v. Rice,* 983 S.W.2d 680, 684 (Tenn. Ct. App. 1998).

In regard to separating the child from his half-brother, the trial court encouraged the parties to work together so that the child could have time with his half-brother. When

making its ruling, the court asked that Father be liberal in allowing the child to spend time with his half-brother. It is clear that the trial court took the appropriate steps in crafting a visitation schedule which would facilitate a relationship between the child and his half-brother. The trial court's ruling appropriately minimizes the potential harmful effects of separating the child from his half-brother. After weighting all of the relevant factors, there is sufficient evidence to rebut the presumption against separating siblings.

Mother argues in her brief that "the best interest of the [c]hild is with her because she has a better education and employment with the government." Her argument is not persuasive. Even if she has a better education and Father is not employed by the government, Father has a stable job and the ability to provide for the child. Mother's assertion does not demonstrate that it is in the child's best interest for her to have custody.

The parents both seem to have a strong relationship with the child. When Mother was unable to care for the child, Father bore the parenting responsibilities, strengthened his relationship with the child, and provided stability for the child. Father has made it clear that he is willing and able to fulfill his parental responsibilities and provide for the child. He also has shown that he intends to facilitate a relationship between the child and Mother and his half-brother. Furthermore, the record demonstrates that Mother has had some history of hindering the child's relationship with Father. As discussed above, awarding custody to Father will facilitate continuity and stability for the child. Considering all relevant factors, we hold that the evidence does not preponderate against the trial court's finding that it is in the child's best interest for Father to have custody.

**VI.**

Father appeals the trial court's decision to deny his request for attorney's fees. He asserts that he is entitled to such an award pursuant to Tenn. Code Ann. § 36-5-103(c), which allows for an award of reasonable attorney's fees incurred in a child custody matter to "the plaintiff spouse . . . from the defendant spouse, and the spouse . . . to whom the custody of the . . . children, is awarded[.]" We note that the decision to grant attorney's fees is largely within the discretion of the trial court. *Galaway v. Galaway*, No. M2015-00670-COA-R3-CV, 2016 WL 1291966, at *5 (Tenn. Ct. App., filed Mar. 31, 2016) (citation omitted). Absent an abuse of discretion, we will not interfere. *Id.* The trial court found that there was a genuine dispute regarding the issues in this case and that the parties should pay their own attorney's fees. We find no abuse of discretion. There were genuine issues in this case that needed to be resolved, and it is proper for each side to pay their own fees.

## VII.

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellant, Alexandra Alvis-Crawford. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.


_____
CHARLES D. SUSANO, JR., JUDGE